UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AIYOBA SARA'MAMY AKANSA,**<br><br>Plaintiff,<br><br>v.<br><br>**DEPARTMENT OF COMMERCE,** *et al.*,<br><br>Defendants. | No. 25-cv-505 |

**MEMORANDUM OPINION**

Plaintiff Aiyoba Sara'mamy Akansa, proceeding *pro se*, brings claims under the Alien Tort Statute, 28 U.S.C. § 1350; the First, Fifth, and Fourteenth Amendments to the U.S. Constitution; the law of nations; the treaties of the United States; and customary international law. Am. Compl. ¶ 1, ECF No. 18. She sues the United States Department of Commerce; Secretary of Commerce Howard W. Lutnick; the United States Census Bureau (collectively, the "Federal Defendants"); the State of Illinois; Governor J.B. Pritzker; the Illinois Department of Public Health and its director, Sameer Vohra (collectively, the "State Defendants"); Judge Charles Ashley Royal, a senior district court judge of the United States District Court for the Middle District of Georgia ("Judge Royal"); Putnam County, Georgia; the Putnam County Sheriff's Department; and Putnam County Sheriff Howard R. Sills. *Id.* Federal Defendants (who also represent Judge Royal) and the Illinois Department of Public Health separately filed motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See* Fed. Defs.' Mot. to Dismiss at 6–10, ECF No. 11; State Defs.' Mot. to Dismiss at 4–6, ECF No. 4. Plaintiff then moved for leave to file an amended complaint. ECF No. 16. The Court will GRANT Plaintiff's

Motion for Leave to File an Amended Complaint and treat the motions to dismiss as directed at the Amended Complaint. *See Azabdaftari v. Mayer*, 734 F. Supp. 2d 51, 52 n. 2 (D.D.C. 2010). For the following reasons, the court will also GRANT Federal Defendants' and the Illinois Department of Public Health's Motions to Dismiss.

I. BACKGROUND

Plaintiff alleges that she is "an Indigenous descendant of the Arawak people" and a "citizen of the Maipuri Arauan Nation" and therefore "an alien and non-citizen to the United States." Am. Compl. ¶ 5. She contends that, in listing her race in a manner inconsistent with her tribal identity and failing to correct the misclassification, Federal and State Defendants "sever[ed] her from her tribal identity and federal rights associated with Indigenous classification." *Id.* ¶ 18. In particular, she alleges that "the Inspector General of the Department of Commerce . . . referred the matter for correction" but that such correction "never occurred." *Id.* ¶ 22. But the letter attached to her Amended Complaint, addressed to "Mr. Xelup," merely notes that the Office of the Inspector General "decided to refer" an unspecified complaint "to management officials at the U.S. Census Bureau and . . . requested that they take any action they deem appropriate." Ex. D at 32, ECF. No. 18-1. Plaintiff "asserts that her forced racial misclassification" and "identity erasure" constitute "violations of jus cogens norms and peremptory international law obligations" and brings claims for crimes against humanity, constructive fraud, ethnic cleansing, environmental racism, apartheid, and violation of Indigenous sovereignty. *Id.* ¶ 1. She also claims that Judge Royal "acted without jurisdiction and in a non-judicial capacity" by "issuing and affirming . . . orders" displacing Plaintiff and other tribal members from land in Putnam County, Georgia. *Id.* ¶¶ 33, 35. She seeks a declaration that Judge Royal's rulings were void, correction of her racial and tribal records,

injunctive relief "to prevent further misclassification or land dispossession," and $10 million in compensatory and punitive damages. *Id.* at 11.

## II. LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff "bears the burden of demonstrating subject matter jurisdiction." *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). If the plaintiff is unable to do so, the court must dismiss the action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Both a lack of Article III standing and sovereign immunity are grounds for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *Geronimo v. Obama*, 725 F. Supp. 2d 182, 185 (D.D.C. 2010).

Under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal under Rule 12(b)(6) is appropriate when "it is 'patently obvious' that the plaintiff cannot possibly prevail based on the facts alleged in the complaint." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012) (quoting *Baker v. Dir., U.S. Parole Comm'n,* 916 F.2d 725, 727 (D.C. Cir. 1990)).

Under both Rule 12(b)(1) and 12(b)(6), a court must accept all well-pleaded factual allegations in the complaint as true. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). "Because the court has 'an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority,' however, the factual allegations in the complaint

'will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Nat'l Ass'n for Latino Cmty. Asset Builders v. Consumer Fin. Prot. Bureau*, 581 F. Supp. 3d 101, 104 (D.D.C. 2022) (quoting *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001)).

"The pleadings of pro se parties are to be 'liberally construed,' and a pro se complaint, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *James v. United States*, 48 F. Supp. 3d 58, 63 (D.D.C. 2014) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)). "This benefit is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates,* 658 F.Supp.2d 135, 137 (D.D.C. 2009). "[E]ven a pro se plaintiff must meet his burdens of proving subject matter jurisdiction and stating a claim for relief." *James*, 48 F. Supp. 3d at 63.

### III.  ANALYSIS

As an initial matter, the court lacks jurisdiction over Plaintiff's claims for equitable relief and damages based on alleged racial misclassification because she has failed to allege that she suffered concrete harm necessary for Article III standing.

Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek" by alleging "a concrete and particularized injury caused by the defendant and redressable by the court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431, 423 (2021).  At the motion-to-dismiss stage, a plaintiff is "required only to state a plausible claim that each of the standing elements is present." *Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017) (cleaned up).  Plaintiff alleges that she suffered direct harm from the mere fact that government actors misclassified her race in census databases and failed to correct the error. *See, e.g.*, Am. Compl. ¶ 25. But misclassification, absent evidence that the erroneous information was

disclosed to third parties, is not a concrete injury. *See TransUnion LLC*, 594 U.S. at 434 ("[T]here is 'no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.'" (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. Dep't of Transp.*, 879 F.3d 339, 344–345 (D.C. Cir. 2018))). Plaintiff does not allege any disclosure of her erroneous racial classification; indeed, any such disclosure is "unlikely . . . given federal law's extensive privacy protections that prohibit sharing individuals' information obtained through the Census." *Angeni v. U.S. Dep't of Com.*, No. 24-cv-2006 (CRC), 2024 WL 4582972, at *2 (D.D.C. Oct. 25, 2024); *see Baldridge v. Shapiro*, 455 U.S. 345, 361 (1982) ("[T]he Census Act embod[ies] explicit congressional intent to preclude *all* disclosure of raw census data reported by or on behalf of individuals."). Absent allegations that government actors shared her information or that any other concrete harm followed from the alleged misclassification, Plaintiff has failed to state a plausible claim that she suffered a concrete injury.

Even assuming Plaintiff could demonstrate a concrete injury, her claims for money damages against Federal and State Defendants are barred by sovereign immunity.[1]

Sovereign immunity is jurisdictional in nature and protects the federal government, its agencies, and its employees acting in their official capacities from suit. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "[P]laintiff bears the burden of establishing that sovereign immunity has been waived or abrogated." *Smith v. Scalia*, 44 F. Supp. 3d 28, 38 (D.D.C. 2014); *see Tri–State Hosp. Supply Corp. v. United States,* 341 F.3d 571, 575 (D.C. Cir. 2003). Based on principles of federalism and comity, the Eleventh Amendment also bars private federal suits against states and

---

[1] To the extent that Plaintiff seeks damages from Secretary of Commerce Howard W. Lutnick, Governor J.B. Pritzker, and the Director of the Illinois Department of Public Health, Sameer Vohra in their individual capacities, sovereign immunity does not bar such claims. *See Clark v. Libr. of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984). But those claims nonetheless fail because Plaintiff has not alleged a concrete injury necessary for Article III standing.

agencies operating as "arms of the State" unless the state has waived its immunity or Congress has abrogated such immunity by exercising its enforcement powers under the Fourteenth Amendment. *Alden v. Maine*, 527 U.S. 706, 756 (1999); *see id.* at 726–27; *Ali v. D.C.*, 278 F.3d 1, 6 (D.C. Cir. 2002). The Eleventh Amendment also bars damages claims against state officials in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff fails to establish any federal waiver of sovereign immunity. The Alien Tort Statute grants original jurisdiction over civil actions filed by non-citizens for torts committed in violation of international law or U.S. treaties, *see* 28 U.S.C. § 1350, but does not confer any waiver of sovereign immunity, *see Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 207 (D.C. Cir. 1985). And to the extent Plaintiff asserts common law torts claims against Federal Defendants under the Federal Tort Claims Act ("FTCA"), the waiver of sovereign immunity contained in the FTCA is limited to the United States and does not extend to agencies or government officials. *See Cox v. Sec'y of Lab.*, 739 F. Supp. 28, 29 (D.D.C. 1990). Further, while Plaintiff broadly states that she "attempted to seek redress through administrative and federal channels," Am. Compl. ¶ 32, she does not otherwise allege that she exhausted her administrative remedies under the FTCA, a mandatory jurisdictional prerequisite. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993).

Sovereign immunity also bars Plaintiff's damages suit against the State of Illinois, the Illinois Department of Public Health, and Governor Pritzker and Vohra in their official capacities. It is undisputed that the Illinois Department of Public Health is a state agency that operates as an arm of the state. *See Puerto Rico Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 872 (D.C. Cir. 2008) ("Courts have held that state entities as varied as universities, transportation authorities, and port authorities can be arms of the State immune from suit."). And Plaintiff neither argues that

Illinois has waived its sovereign immunity from tort actions in federal court nor pleads a cause of action under a federal statute that abrogates it. *See Ali*, 278 F.3d at 6.

As to Plaintiff's request for declaratory relief voiding Judge Royal's decisions, a "federal district court lacks jurisdiction to review decisions of other federal courts." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006). Because Plaintiff's claim is "wholly premised on h[er] view that the[] prior orders were erroneous," dismissal is appropriate. *Xelup v. Dep't of Com.*, No. 1:24-CV-1241 (CJN), 2025 WL 785218, at *3 (D.D.C. Mar. 12, 2025). "[R]elief through an appeal to an appellate court" is the proper "remedy available to a litigant who seeks to challenge the legality of decisions made by a judge in her judicial capacity." *Jafari v. United States*, 83 F. Supp. 3d 277, 279 (D.D.C.) (cleaned up). To the extent Plaintiff seeks damages from Judge Royal, judges "enjoy absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of all jurisdiction." *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993); *see Mireles v. Waco,* 502 U.S. 9, 11 (1991) (per curiam). Beyond conclusory allegations of "judicial overreach," Plaintiff pleads no specific facts suggesting that Judge Royal acted outside of his official capacity. Am. Compl. ¶ 34. In fact, the actions about which Plaintiff complains—"issuing and affirming the displacement orders," *id.* ¶ 33—are "quintessential official judicial acts . . . protected by absolute judicial immunity," *Jafari*, 83 F. Supp. 3d at 280.

Finally, the court lacks jurisdiction over claims in the Amended Complaint that are "so attenuated and unsubstantial as to be absolutely devoid of merit," *Hagans v. Lavine*, 415 U.S. 528, 536 (1974) (quoting *Newburyport Water Co. v. Newburyport,* 193 U.S. 561, 579 (1904)), including allegations that Federal and State Defendants have committed "crimes against humanity," "racial apartheid," "identity erasure," "ethnic cleansing," "forced nationality," and

"constructive fraud," Am. Compl. ¶¶ 39–40.  Even if the court were to reach the merits of these claims, it would conclude that Plaintiff failed to satisfy Federal Rules of Civil Procedure 8(a) and 12(b)(6) because she has not alleged specific facts sufficient to provide adequate notice of the operative facts and her entitlement to relief.  *See Iqbal*, 556 U.S. at 678.

### IV.     CONCLUSION

Accordingly, the court will GRANT Plaintiff's Motion for Leave to File an Amended Complaint, ECF No. 16; Federal Defendants' Motion to Dismiss, ECF. No. 11; and the Illinois Department of Public Health's Motion to Dismiss, ECF No. 4.  The Amended Complaint is dismissed as to Federal Defendants, State Defendants, and Judge Royal.  A separate order will accompany this opinion.[2]

Date: November 24, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[2] As to Plaintiff's claims against Putnam County, Georgia; the Putnam County Sheriff's Department; and Putnam County Sheriff Howard R. Sills, the court notes that it is unclear from the record whether Plaintiff properly served these defendants.  *See* Fed. R. Civ. P. 4(j)(2).  A separate order to show cause will accompany this opinion.